UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

| | | |
|---|---|---|
| RONALD ROGALSKI, # 257594, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:07-cv-946 |
| | ) | |
| v. | ) | Honorable Janet T. Neff |
| | ) | |
| GEORGE PRAMSTALLER, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983. Plaintiff alleges that defendant George Pramstaller, D.O., former Chief Medical Officer of the Bureau of Health Care Services, Michigan Department of Corrections (MDOC), violated his Eighth Amendment rights on March 14, 2006, when he upheld on appeal the denial of plaintiff's request for a reverse colostomy surgery because it was not medically necessary. (docket # 17 at 7, ¶ 28). Plaintiff seeks an award of monetary damages and injunctive relief. (*Id.* at 10).

On April 22, 2008, defendant Pramstaller filed a motion for summary judgment based on the affirmative defense of plaintiff's failure to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). (docket # 23). On May 16, 2008, plaintiff filed a brief in opposition to defendant's motion. (docket # 29). The court entered an order on June 16, 2008, granting plaintiff an extension until July 7, 2008, within which to supplement his response. (6/16/08 Order, docket # 32). Plaintiff elected not to supplement his response. The only documents plaintiff filed after June 16, 2008, were change of address forms, the most recent of which notified the court of

plaintiff's release on parole.  (docket # 35).  For the reasons set forth herein, I recommend that defendant's motion for summary judgment be granted.

## Applicable Standards

### A.      Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *S.S. v. Eastern Ky. Univ.*, 532 F.3d 455, 452 (6th Cir. 2008).  The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *El Bey v. Roop*, 530 F.3d 407, 413 (6th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim.  *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).  Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party

has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where, however, a moving party with the burden of proof seeks summary judgment, he faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). As shown above, the moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). This higher standard applies because lack of exhaustion under 42 U.S.C. § 1997e(a) is an affirmative defense.

**B.      Standards Applicable to the Affirmative Defense of Failure to Exhaust Remedies**

Defendant has asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies.  A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies.  42 U.S.C. § 1997e(a); *see Jones v. Bock*, 127 S. Ct. 910, 923 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734.  In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 127 S. Ct. at 921.  The burden is on defendant to show that plaintiff failed to properly exhaust his administrative remedies.  The Supreme Court reiterated that "no unexhausted claim may be considered."  127 S. Ct. at 923.  The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims.  127 S. Ct. at 923-26.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law.  *Jones v. Bock*, 127 S. Ct. at 922-23.  In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."  *Id.* at 90.  Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly

-4-

exhausted" for purposes of filing a § 1983 action in federal court. *Id.* at 90-93; *see* 42 U.S.C. § 1997e(a).

MDOC Policy Directive 03.02.130 (effective December 19, 2003),[1] sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. (*See* docket # 24, Ex. 3). Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). Thus, where an individual is not named in the Step I grievance, or his involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted. *See Davis v. Straub*, No. 1:07-cv-156, 2008 WL 696603, at * 5 (W.D. Mich. Mar. 13, 2008).

The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business

---

[1]On July 9, 2007, the MDOC amended Policy Directive 03.02.130. However, the 2003 version of the policy directive was in effect at all times relevant to plaintiff's claims.

days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy. The Regional Health Administrator or his designee is the Step II respondent in grievances alleging inadequate medical care. *Id.* at ¶ FF. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the Step III respondent. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved in writing ...." *Id.*

A prisoner must pursue appeals of his grievance through Step III of the administrative process. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir.1999) ( "[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see also Booth v. Churner*, 532 U.S. at 741 n. 6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."); *Jones v. Douglas*, 108 F. App'x 254, 256 (6th Cir.2004).

## **Proposed Findings of Fact**

The following facts are beyond genuine issue.  On August 8, 2005, plaintiff filed Grievance Number ACF 2005-08-846-12d2 (docket # 24, Ex. 1).  Plaintiff's grievance stated that on March 9, 2005 he had colostomy surgery, and that in July 2005 he had been scheduled for reverse colostomy surgery.  Plaintiff argued that he was "past due" for the reverse colostomy surgery. Plaintiff's grievance made no mention whatsoever of defendant Pramstaller:

> Griever [sic] is past due for that surgery, and the area around the stoma is infected with a nasty rash, plus griever [sic] is in danger of being injured in that area by accidentally tripping and falling on the stoma, bumping into something or being hit in that area.  Griever [sic] is in need of surgery for the reversal of his colo[stomy], before a BACTERIA[L] INFECTION sets in or some type of accident occurs.  Griever [sic] feels that CMS or HS agrees with MDOC to let GRIEVER [sic] MAX OUT and have him pay for his own surgery because MDOC and HS don't feel at fault.  Griever [sic] knows that writing this grievance is a waste of time an[d] is informing his family to contact a[n] Attorney.

(*Id.*).

On August 25, 2005, Nurse Clark provided the following Step I response:

> Prisoner has seen the Medical Service Provider on 6/2/05, 8/5/05.  Labs were ordered on 6/2/05 to be done in November.  Prisoner has been referred to the general surgery clinic for a[n] eval[uation] to [investigate possible] reversal of [the] colostomy on 6/6/05 but CMS has denied [].  On 8/5/05 MSP sent an appeal.  Health care has been provided consistent with PD 03.04.100 Health Services.

(*Id.*).

Plaintiff's Step II appeal did not mention defendant Pramstaller.  The Step II response indicated that the appeal of CMS's decision remained pending, and that plaintiff's health was not endangered by the absence of reverse colostomy surgery.  (docket # 24, Ex. 1).

Plaintiff's Step III appeal is dated October 10, 2005.  Plaintiff's appeal emphasized his intent to pursue a claim for monetary damages:

-7-

> Due to respondent's negligence [in failing] to reply by 10/5/05, [and] not request[ing] an extension [plaintiff filed a Step III appeal.] Today is 10/10/05, and Griever [sic] is now bringing Step I and Step II to Step III in the Director's Office in Lansing, Michigan [because] this matter [was] not resolved [at] Step I or Step II.  Griever [sic] still seeks damages for pain [and] suffering in the same amount of $100,000.00 [plus], due to MPF's H/S neglect [in] ordering [a] blood test, X-rays, and place[ment] of Griever [sic] on a special food tray once MPF H/S became aware of Griever's [sic] disease before the emergency surgery, and for "CMS HMO" and MDOC's ability to keep Griever [sic] near death instead of granting Griever's [sic] needed surgery that is past due.  [Plaintiff intends to seek damages] [e]ven after Griever's [sic] reversal surgery is completed.

(*Id.*).  On December 6, 2005, plaintiff received this Step III response:

> Grievant alleges that he is being denied proper care because he was not referred for surgical intervention to have his colostomy reversed.
>
> This grievance was prematurely filed.  Grievant had been advised of the decision of the network provider and told that the decision was going to be appealed by his MSP.  This has occurred and grievant has since been seen and evaluated for possible reversal.

(*Id.*).

Plaintiff's Step III grievance dated July 27, 2006, set forth verbatim below, is devoid of any reference to defendant Pramstaller:

> All of this shows and proves "deliberate indifference to a serious '(indeed a life threatening)' medical need[]." CMS, (and by contract MDOC) is yet again by the same tactics, trying to delay and/or deny Grievant's needed surgery for the reversal of his colostomey. [sic]  Which was caused by CMS's original "deliberate indifference to the original problem." [sic].  There is only one way this can be alleviated, and that is by approving surgery to reverse my Colostomey [sic], along with [] significant monetary compensation.

(Grievance Number 192810,28A, docket # 24, Ex. 2).  On August 9, 2006, this grievance was rejected under P.D. 03.02.130 because it was a duplicative of his earlier grievance.  The information plaintiff provided failed to show how this grievance differed from Grievance Number ACF 2005-08-846-12d2.  (8-9-06 Step III grievance response, docket # 24, Ex. 2).

Plaintiff filed this lawsuit against defendant Pramstaller on September 24, 2007.

## Discussion

"Congress enacted the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e *et seq.* in 1996 in the wake of a sharp rise in prisoner litigation in the federal courts.  The PLRA contains a variety of provisions designed to bring this litigation under control . . . .  A centerpiece of the PLRA's effort 'to reduce the quantity . . . of prisoner suits' is an 'invigorated' exhaustion provision, § 1997e(a)."  *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).  "The exhaustion provision of the PLRA states: 'No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.'" *Jones v. Bock*, 127 S. Ct. 910, 914 (2007) (quoting 42 U.S.C. § 1997e(a)).

The record before the court establishes beyond genuine issue that plaintiff did not properly exhaust his administrative remedies on any claim against defendant Pramstaller.  Plaintiff did not file any grievance against defendant Pramstaller based on his March 14, 2006 decision to deny plaintiff's appeal, and plaintiff did not pursue the denial of such a grievance through Step III of the grievance process.  Defendant Pramstaller has therefore established his affirmative defense.

## Recommended Disposition

For the reasons set forth herein, I recommend that defendant's motion for summary judgment (docket # 23) be granted, and that plaintiff's complaint be dismissed with prejudice.


Dated:   October 29, 2008                  /s/  Joseph G. Scoville_____
                                           United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).